IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TIMOTHY W. BROWN                                                    PLAINTIFF

      v.                                NO. 3:10-CV-03027-JLH

ARKANSAS DEPARTMENT OF
HUMAN SERVICES, et. al                                          DEFENDANTS

REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On March 24, 2010, Timothy W. Brown ("Plaintiff") filed this cause of action against the Arkansas Department of Human Services ("DHS") and the Fourteenth Judicial District of the State of Arkansas alleging violations of his constitutional rights by way of 42 U.S.C. §§ 1983 and 1985. ECF No. 3. An Amended Complaint was filed on April 22, 2010. ECF No. 8. Plaintiff did not pay the filing fee for this action, but instead filed a Motion for Leave to Proceed *in forma pauperis* ("IFP"), which was granted on May 5, 2010. Order Granting Pl.'s Mot. To Proceed IFP, ECF No. 11.

This matter is presently before the court for initial screening of Plaintiff's pleading pursuant to 28 U.S.C. § 1915A. For reasons discussed below, the court recommends that this action be summarily dismissed pursuant to Section 1915(e)(2) for failure to state a claim upon which relief can be granted.

I.      BACKGROUND

Plaintiff's allegations center around the termination of parental rights to three of his children, J.E.B., T.M.A.B., and T.T.L.B., and an ongoing case concerning the termination of parental rights

to his fourth child, B.E.B.  He also alleges constitutional violations in connection with several criminal charges.

    A.  <u>Termination of Parental Rights as to J.E.B., T.M.A.B., and T.T.L.B.</u>

    The following facts were presented in Plaintiff's amended complaint and Exhibit A.[1]  After receiving reports of child maltreatment, DHS began a lengthy investigation.  Am. Compl. 3.  DHS worker Lex Maples investigated reports of physical abuse to T.M.A.B., which he found to be true.  Ex. A, DHS Report, February 8, 2001.  Following an altercation that occurred on July 10, 2001, DHS filed a petition for emergency custody.  Am. Compl. 4; Ex. A, Pet. For Emergency Custody, July 12, 2001.  The children were subsequently placed in foster care, but were allowed supervised visitation with their parents.  Am. Compl. 4-5.  In October 2003, Plaintiff absconded with T.M.A.B. and T.T.L.B.  *Id.* at 6; Ex. A, Order Terminating Parental Rights 2.  On February 24, 2004, Plaintiff's parental rights to J.E.B., T.M.A.B., and T.T.L.B. were terminated.  *Id.*  Plaintiff was subsequently arrested and charged with felony interference with child custody.  Am. Compl. 6-7.  Throughout this time period, Plaintiff and his wife, Lou Ann Brown, were arrested on various criminal charges.[2]  *Id.* at 4-7.

    B.  <u>Termination of Parental Rights as to B.E.B.</u>

    On October 19, 2009, after receiving reports of sexual abuse, DHS filed a petition for

---

    [1] Due to the sensitive nature of the submitted documents (as well as sheer volume), Exhibit A was not made available on ECF.  Order, May 27, 2010, ECF No. 13.

    [2] On July 7, 2001, Lou Ann Brown was arrested for DWI/drugs, refusal to submit to a blood test, and careless or prohibited driving.  On October 5, 2001, she was arrested for one count of prescription drug fraud and three counts of endangering the welfare of a minor.  Plaintiff was arrested simultaneously for driving on a suspended license and DWI/drugs.  On November 4, 2001, Plaintiff was arrested for driving on a suspended license.  Lou Ann Brown was arrested on at least two separate occasions on hot check charges.  On April 6, 2003, Plaintiff was arrested pursuant to a warrant for revocation of a suspended sentence.  Plaintiff was arrested on February 29, 2004, for felony interference with child custody.  Lou Ann Brown was also arrested at this time for failure to appear in connection with prescription drug fraud charges.

emergency custody with respect to B.E.B., Plaintiff's fourth child.  Am. Compl. 6-7; Ex A, Pet. for

Emergency Custody.  This petition was granted and DHS was given emergency custody of B.E.B.

Am. Compl. 7; Ex. A- Order for Emergency Custody, October 19, 2009.  Subsequently, DHS filed

a petition requesting termination of Plaintiff's parental rights.  Am. Compl. 7; Ex. A- Pet. for

Termination of Parental Rights, November 10, 2009.  As of this date, the petition has not been ruled

upon and the case remains open.

Plaintiff brings suit against twenty-seven individuals alleging violations under the First,

Fourth, Fifth, Eighth, and Fourteenth Amendments.  Am. Compl. 7-8.  Specifically, Plaintiff alleges

that Defendants deprived him of his children without due process, subjected him to unreasonable

searches and seizures, initiated false arrests, subjected him to cruel and unusual punishment, denied

him equal protection of the laws, and prohibited him from the free exercise of his chosen religion.[3]

*Id.*  Additionally, Plaintiff alleges violations of various federal criminal statutes.[4]  *Id.* at 8.

Plaintiff requests the following relief: a change of venue to the Eastern District of Arkansas;

a preliminary injunction returning custody of his minor children; compensatory damages in the sum

of $60,000,000; punitive damages in the sum of $60,000,000; costs incurred with respect to his suit;

reasonable attorney's fees; and such other relief as the court deems proper.  *Id.* at 9.

## II.    APPLICABLE LAW

Because Plaintiff is proceeding *in forma pauperis*, his complaint is subject to the provisions

of 28 U.S.C. § 1915(e).  These provisions apply to all *in forma pauperis* litigants, whether they are

incarcerated or not.  *See Floyd v. United States Postal Serv.,* 105 F.3d 274, 275-77 (6th Cir. 1997)

---

[3] Plaintiff does not state which specific events gave rise to many of these violations.

[4] The court is not a prosecutorial body and cannot pursue Plaintiff's criminal allegations.

(holding that section 1915 applies to both prisoners and non-prisoners, despite the ambiguity of section 1915(a)(1)).  Section 1915(e)(2) provides that the court may dismiss a case "at any time" if it determines that the complaint fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).

To state a claim under 42 U.S.C. § 1983, the complainant must allege facts, which if proven true, would demonstrate that the named defendant(s) violated the complainant's federal constitutional rights while acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: *the complaint must allege facts,* which if true, state a claim as a matter of law."  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (emphasis added); *see also Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985) ("[a]lthough it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions").

Moreover, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution.  *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990); *Speech v. Ramsey County*, 954 F. Supp. 1392, 1397 (D. Minn. 1997).  Thus, in order to state a cognizable § 1983 claim, a complaint must set forth specific factual allegations describing what each named defendant allegedly did, or failed to do, that violated the plaintiff's federal constitutional rights.

## III.    DISCUSSION

As a preliminary matter, we decline Plaintiff's request to transfer this case to the Eastern District of Arkansas.  Am. Compl. 8.  Plaintiff originally filed this lawsuit in the Eastern District of Arkansas.  Pl.'s Compl. 3.  By order entered March 24, 2010, Judge Wright determined that the

interests of justice would best be served by transferring the case to the Western District of Arkansas. Order, ECF No. 4.  We find that venue properly rests in this district.  28 U.S.C. 1391(b).  A substantial portion of the events giving rise to Plaintiff's claim occurred within the Western District. *Id.*  Furthermore, most, if not all, Defendants reside in this district.  *Id.*  Thus, we decline Plaintiff's request for a change of venue.

In this case, the complaint fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).  The majority of Plaintiff's claims are time-barred.  Additionally, his allegations with regard to B.E.B. are barred by the *Younger* doctrine.  For these reasons, dismissal of the present action is recommended.

A. <u>Statute of Limitations</u>

Plaintiff claims that Defendants deprived him of his children, J.E.B., T.M.A.B., and T.T.L.B., without due process of law.  Am. Compl. 7-8.  He also alleges constitutional and statutory violations resulting from his various criminal arrests.  *Id.*

Arkansas recognizes statutory causes of action for civil rights violations.  ARK. CODE. ANN. §§ 16-123-101-108 (West 2010).  However, unlike Missouri, Arkansas has not codified a general statute of limitations specifically for civil rights actions.  Accordingly, we may look to principles developed in federal civil rights actions brought under § 1983, a statutory provision also without a limitations period.  *See Murphy v. Timberlane Reg'l School Dist.,* 22 F.3d. 1186,1193 (1st Cir. 1994); *see also* ARK. CODE ANN. § 16-123-105(c) (directing courts to consider § 1983 when analyzing civil rights offenses).  For § 1983 claims, the Supreme Court has expressed a preference for borrowing the state statute of limitations governing personal injury actions because "[i]t is most unlikely that the period of limitations applicable to [personal injury] claims ever was, or ever would

-5-

be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect." *Wilson v. Garcia*, 471 U.S. 261, 279 (1985); *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 855 (8th Cir. 2000). Accordingly, we have held that the three-year limitations period contained in Arkansas' general personal injury statute applies to § 1983 actions. *See Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992). This standard has also been applied to § 1985 actions. *See Housley v. Erwin*, 325 Fed. Appx. 474 (8th Cir. 2009) (citing *Roach v. Owen*, 689 F.2d 146, 146-67 (8th Cir. 1982)).

Plaintiff's rights to J.E.B., T.M.A.B., and T.T.L.B. were terminated on February 24, 2004. Am. Compl. 6, Ex. A- Order Terminating Parental Rights. Furthermore, all arrests occurred between 2001 and 2004. Am. Compl. 4-7. This action was not filed until March 24, 2010. Pl.'s Compl., ECF No. 3. Therefore, Plaintiff's claims concerning the termination of his parental rights to J.E.B., T.M.A.B., and T.T.L.B. as well as his various arrests are barred by the applicable three-year statute of limitations.

    B. *Younger* Doctrine

Plaintiff's only remaining claim concerns an ongoing state case regarding the termination of parental rights to his fourth child, B.E.B. Am. Compl. 7. For reasons explained below, we must abstain from exercising jurisdiction over this matter.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Barzilay v. Barzilay,* 536 F.3d 844, 849 (8th Cir. 2008) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 400 U.S. 800, 817 (1976)); *see Cohens v. Virginia*, 19 U.S. 263, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."). However, the Supreme Court has articulated several abstention doctrines

as exceptions to this rule, once of which is the *Younger* doctrine. *Younger v. Harris*, 401 U.S. 37 (1971).

*Younger* is premised on notions of federalism and comity, and espouses a strong policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances. *Barzilay*, 536 F.3d at 849; *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-32 (1982). Unlike other discretionary abstention doctrines, *Younger* mandates abstention in cases where granting relief would interfere with pending state proceedings involving important state interests. *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 477 n. 1 (8th Cir. 1998); *see e.g., Middlesex,* 457 U.S. at 432 (dismissal appropriate in light of pending attorney disciplinary proceeding); *Moore v. Sims*, 442 U.S. 415, 434-35 (1979) (dismissal appropriate in light of pending child custody proceedings).

The *Younger* doctrine applies when: (1) there is a state proceeding that is both ongoing and judicial in nature; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity for the plaintiff to raise questions of federal law in the state proceeding. *Middlesex*, 457 U.S. at 432. If all three requirements are met, a federal court must abstain unless it detects "bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate." *Id.* at 435.

We conclude that all three *Younger* requirements are met. First, there is no question that the pending juvenile case regarding the termination of Plaintiff's rights to B.E.B. is both ongoing and judicial in nature. On November 10, 2009, DHS filed a petition for the termination of parental rights. Ex. A, Pet. For Termination of Parental Rights. As of this date, a continuance has been entered and the petition has yet to be ruled upon. Since there is an ongoing state judicial proceeding,

-7-

the first prong of *Younger* is satisfied.

Secondly, family and domestic relations have historically been an area of important state interest. *See e.g.,  Moore*, 442 U.S. at 435 ("[f]amily relations are a traditional area of state concern"); *Amerson v. State of Iowa*, 94 F.3d 510, 512 (8th Cir. 1996) (state court adjudication terminating parental rights is a matter of public concern); *P.G. v. Ramsey County*, 141 F. Supp. 2d 1220, 1229 (D. Minn. 2001).  Plaintiff does not dispute this, nor does he contend that the state court is unable to address his due process claims.  Indeed, we find nothing in the Arkansas Code or case law barring litigants from raising constitutional claims during juvenile proceedings. *See* ARK. CODE ANN. § 9-27-341.  In fact, litigants must raise such claims at the trial level in order to preserve them for appeal. *See Woods v. Arkansas Dep't of Human* Serv., 1999 WL 199749, 1-2 (Ark. App. 1999) (plaintiff failed to raise due process argument at trial court level and issue was not preserved); *Kight v. Arkansas Dep't of Human Serv.*, 94 Ark. App. 400, 408-09, 231 S.W.3d 103, 109 (2006).

For these reasons, we conclude that the three *Younger* criteria are satisfied.  Moreover, *Younger*'s bad-faith exception has no place here, as there are no facts to support Plaintiff's assertion that Defendants acted with bias. *P.G.*, 141 F. Supp. 2d at 1228 ("*Younger*'s bad-faith exception is extraordinarily rare, and applies only in truly exceptional circumstances, such as where the state court is clearly incompetent to adjudicate the issues by reason of bias.").

The only remaining issue is whether *Younger* requires outright dismissal or entering a stay pending the final outcome of the state proceeding.  In cases involving traditionally equitable forms of relief, *Younger* contemplates outright dismissal. *Night Clubs*, 163 F.3d at 481 (citing *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)).  In cases where damages are sought, a stay is usually the appropriate form of abstention. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996).  A

limited exception has been recognized in cases where an award of damages would require declaring a state statute or state court judgment unconstitutional. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 102 (1981) (dismissal in § 1983 action was appropriate where an award of damages first required a declaration that a state tax scheme was unconstitutional); *Amerson*, 94 F.3d at 513 (dismissal appropriate where award of damages required discretionary declaration that a state court termination of parental rights was unconstitutional).

We conclude that this case is analogous to the circumstances in *Amerson*. Any relief granted by this court would require us to first declare the state juvenile proceedings unconstitutional. *Id.* at 513 ("plaintiff's incidental insertion of a general claim for damages will not suffice to prevent the dismissal of a 1983 case where the damages sought cannot be awarded without first declaring unconstitutional a state court judgment on a matter firmly committed to the states"). Thus, we believe dismissal, rather than a stay, is the appropriate form of abstention in this instance. However, even if the *Fair Assessment* and *Amerson* exceptions were inapplicable to these circumstances, dismissal is still appropriate because the remaining Defendants are immune from suit.

C. Immunity

After applying the statute of limitations, the only remaining Defendants are Judge Isbell, Nancy Mathis, and Deanna Evans.[5] As explained below, these Defendants are immune from suit. Entering a stay would be futile and would unnecessarily prolong an inevitable dismissal. We believe

---

[5] Of the twenty-seven Defendants named in Plaintiff's Amended Complaint, only three remain after application of the statute of limitations. ECF No. 3. Furthermore, Defendants Knickrehm, Selig, Thalheimer, and Hopkins are not specifically mentioned in reference to any specific harms. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (where plaintiff did not allege defendant was personally involved in or had direct responsibility for incidents that injured him, his claims against that defendant were not cognizable under § 1983). Thus, Plaintiff has not provided sufficient facts to state a claim against these Defendants.

judicial economy cautions against such a result.

1. Judge Isbell

Defendant Isbell is a circuit court judge in the Arkansas state courts. He has absolute immunity against any claims for money damages arising out of his official duties. *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994) ("Judges performing judicial functions enjoy absolute immunity from § 1983 liability."). Furthermore, judicial immunity is not overcome by allegations of bad faith or malice. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority.").

Judicial immunity is overcome in only two situations: (1) if the challenged act is non-judicial; or (2) if the action, although judicial in nature, was taken in complete absence of all jurisdiction. *See Mireles*, 502 U.S. at 11. Plaintiff has not shown, nor can he show, that the actions of Judge Isbell were performed outside of his official capacity. Furthermore, Judge Isbell is a juvenile court judge and this is a juvenile matter. Thus, it cannot be argued that Judge Isbell was operating "in the complete absence of all jurisdiction." *Id.* at 12. For these reasons, Plaintiff's claims for money damages would be barred by the doctrine of judicial immunity.

2. Nancy Mathis

Nancy Mathis is an attorney for DHS. Plaintiff does not specify how Defendant Mathis violated his constitutional rights. *See Martin*, 780 F.2d at 1338 (where plaintiff did not allege defendant was personally involved in or had direct responsibility for incidents that injured him, his claims against that defendant were not cognizable under § 1983). We can only conclude that Plaintiff is suing Defendant Mathis for representing DHS in the juvenile proceedings concerning

B.E.B.  "To the extent [a state authorized child welfare agency and its worker] are sued for initiating judicial proceedings, [the welfare worker's] role was functionally comparable to that of a prosecutor."  *Abdouch v. Burger*, 426 F.3d 982, 989 (8th Cir. 2005) (quoting *Thomason v. SCAN Volunteer Servs., Inc.,* 85 F.3d 1365, 1373 (8th Cir. 1996)).  Thus, Defendant Mathis is absolutely immune from liability for initiating judicial proceedings.  *Martin*, 623 F.2d at 1285 (finding that absolute immunity applied to protect a prosecutor who had initiated the termination of parental rights without notice to the parents); *Myers v. Morris*, 810 F.2d 1437, 1452 (8th Cir. 1987) (attorney was absolutely immune for the function of initiating juvenile dependency and neglect proceedings).

### 3.  Defendant Evans

Defendant Evans is the court-appointed attorney ad litem for B.E.B.  Ex. A, Order for Emergency Custody, October 19, 2009.  She is absolutely immune from liability for her role as guardian ad litem.  *See McCuen v. Polk County, Ia.*, 893 F.2d 172, 174 (8th Cir. 1990) (holding that a guardian ad litem's absolute immunity extends to her duties of preparing reports and making recommendations to family court); *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005).

Plaintiff has not provided any facts that these individuals were acting outside the scope of their respective roles within the judicial process.  *Id.*  As such, Defendants Isbell, Mathis, and Evans are entitled to absolute immunity.  For this reason, we find that entering a stay would be futile, as the remaining Defendants are absolutely immune from liability for their official acts.

## IV.  CONCLUSION

Accordingly, it is recommended that the current action be **DISMISSED**, as it fails to state a claim under § 1983.

**The parties have fourteen (14) days from receipt of this report and recommendation**

in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 5th day of October 2010.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE